UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x
TAKHARA SMITH,

                        Plaintiff,                      No. 22-CV-5566

   -against-

                                                    COMPLAINT

ALL CAPITAL MOTORS INC., and
WESTLAKE SERVICES, LLC d/b/a
WESTLAKE FINANCIAL SERVICES,          Jury Demanded

                        Defendants.
_____x

## Introduction

1. This is a suit brought by a consumer, Takhara Smith ("Plaintiff"), against an automobile dealership, All Capital Motors Inc. ("ACM"), for using fraudulent misrepresentations to sell her a motor vehicle and then assigning the retail installment contract to a finance company, Westlake Services, LLC d/b/a Westlake Financial Services ("Westlake Financial"). Plaintiff asserts claims under the Truth-in-Lending Act ("TILA"), the Fair Credit Reporting Act ("FCRA"), and the Equal Credit Opportunity Act ("ECOA"), and further asserts state-law claims for declaratory relief and for common-law fraud, and violations of New York General Business Law §§ 349 and 350.

## Parties

2. Plaintiff is a resident of Hattiesburg, Mississippi.

1

3. Defendant ACM is a New York corporation formed in Richmond County, but with its principal place of business in Brooklyn, New York.

4. Defendant ACM has been at all times relevant to this matter a full-service New York used car dealer.

5. Defendant ACM has its principal place of business at 1945 Utica Avenue, Brooklyn, NY 11234.

6. Defendant Westlake Financial is an Internet-based, privately held finance company that specializes in the acquisition and servicing of prime, sub-prime, and non-prime automotive retail installment contracts.

7. Defendant Westlake Financial is a California Limited Liability Company authorized to do business in the State of New York.

8. Defendant Westlake Financial has its principal place of business at 4751 Wilshire Blvd #100, Los Angeles, CA 90010.

9. Defendant ACM is a "user" as governed by the FCRA.

## Jurisdiction and Venue

10. This Court has federal question jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. § 1640, 15 U.S.C. § 1681n, 15 U.S.C. 1681o, and 15 U.S.C. § 1691e.

11. This Court has supplemental jurisdiction under 28 U.S.C § 1367(a).

12. This Court has diversity jurisdiction under 28 U.S.C. § 1332 since the jurisdictional amount exceeds $75,000 and the plaintiff does not share a state of citizenship with any defendant.

13. Venue is proper in this district under 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

14. Venue is also proper in this district because Defendants ACM and Westlake Financial transact business in this district and the interests of justice require maintenance of this action in this district.

## Facts

15. In September 2021, Plaintiff was shopping online for a new vehicle.

16. During her search, Plaintiff found a listing of interest on the website CarGurus for a used 2016 Nissan Maxima, with a stated price of $15,800.

17. The car was being sold by ACM, a full-service New York used-car dealer.

18. Because she was interested in purchasing the used 2016 Nissan Maxima, Plaintiff applied for financing on ACM's website.

19. That same month, ACM contacted Plaintiff, informing Plaintiff that her financing application had been approved and that she could purchase the car.

20. Based upon the representations of ACM, Plaintiff travelled to and from Mississippi to New York at her own expense to purchase the automobile.

21. Based upon the representations of ACM, Plaintiff paid for her own lodging in New York to purchase the automobile.

22. On September 22, 2021 Plaintiff arrived at ACM to complete the transaction for the car.

23. When Plaintiff arrived, she saw the 2016 Nissan Maxima on ACM's lot.

24. Upon entering, Plaintiff met with Henry, a salesperson at ACM.

25. After having an opportunity to test drive the vehicle, Plaintiff spoke with Henry about the car, and he told her that the vehicle was not ready yet as it had to be inspected and asked Plaintiff to come back the next day.

26. When Plaintiff went back to ACM on September 23, 2021, she met with George, a sales manager at ACM.

27. During Plaintiff's conversation with George, he confirmed the sales price of $15,800, and they discussed the interest rate Plaintiff would have to pay.

28. George also told Plaintiff that she had to purchase the vehicle service contract in order to obtain financing for the car.

29. Plaintiff agreed to purchase the vehicle service contract as she was under the impression that it was required to complete the transaction.

30. Plaintiff then signed the paperwork presented to her to purchase the vehicle and made a down payment of $4,500.

31. The Retail Installment Contract stated that the Contract and Security Agreement were assigned to Westlake Financial.

32. Unbeknownst to Plaintiff at the time of signing, ACM had changed the sales price of the car from $15,800 to $18,500 in the documents.

33. After making the down payment and signing the documents, Plaintiff was told that the car still was not ready and to come back the next day.

34. When Plaintiff returned to ACM on September 24, 2021, she was given a copy of the paperwork she had signed the previous day and was able to take the car.

35. Several months later, when Plaintiff was looking to refinance the car, she called the bank for a payoff balance and noticed it seemed high.

36. Upon checking the documents she had signed at ACM, Plaintiff discovered that ACM had changed the sales price of the car from $15,800 to $18,500.

37. Plaintiff thought the price change was a mistake at first but noticed there was no additional fee in the contract that would warrant the price change.

38. Plaintiff also noticed a page in the vehicle service contract entitled "Disclosures" that contained a purported electronic signature from Plaintiff.

39. Plaintiff did not sign the "Disclosures" page of the vehicle service contract, was not given an opportunity to read the page, and had no knowledge of the page when she was signing documents at ACM.

40. Nevertheless, her signature ended up on the "Disclosures" page when she was given copies of the documents she signed on September 24, 2021.

41. The "Disclosures" page explained that the purchase of the vehicle service contract was not required in order to purchase or obtain financing for the motor vehicle, which is not what George had told her at ACM.

42. On July 7, 2022, Plaintiff called ACM and spoke with Henry about the issue of the sales price.

43. Henry told Plaintiff that George had passed away, and that the new sales manager would give her a call.

44. After waiting a few days and not hearing from ACM, Plaintiff called ACM back on July 11, 2022, and spoke with Michael, the new sales manager.

45. Michael told Plaintiff that he would have to go to an offsite storage unit to retrieve the documents Plaintiff signed and would call her back, but seemed to be aware of the information in Plaintiff's contract without having it in front of him.

46. Michael never called Plaintiff back, so she called him again on July 13, 2022.

47. Michael told Plaintiff that there was nothing ACM could do as Plaintiff had "agreed" to the sales price in the contract.

48. Plaintiff asked to speak with ACM's owner and was told he would call her, but he never did.

## Count I
### Truth in Lending Act Violations by ACM and Westlake Financial

49. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

50. ACM is a creditor as defined by TILA, 15 U.S.C. § 1601, *et seq.*

51. Plaintiff is a consumer as defined by TILA, 15 U.S.C. § 1601, *et seq.*

52. ACM failed to provide the disclosures required under TILA, 15 U.S.C. § 1601, *et seq.*

53. ACM violated the TILA in one or more of the following ways, by example only, and without limitation:

 (A) By lying about and misrepresenting the sales price of the car, then inserting a sales price higher than what was discussed and advertised into the documents Plaintiff signed;

 (B) By lying and misrepresenting the fact that Plaintiff had to purchase the vehicle service contract;

 (C) By falsely completing the "Disclosures" page with Plaintiff's electronic signature;

 (D) By failing to provide Plaintiff with a copy of the documents she signed before consummation of the contract.

54. As a result of the above, ACM has not provided accurate and complete disclosures as required by the Truth in Lending Act.

55. That is, by apparently intentionally and willfully transposing $15,800 so as to make it $18,500 and by adding a charge for $1,595 for a service contract she was told she was required to have as a condition of the extension of credit and a $160 charge for GAP insurance she was told she was required to have as a condition of the extension of credit, Defendants added hidden finance charges that were not disclosed.

56. By not disclosing the above charges, Defendants violated their disclosure obligations under TILA, which is at its heart a sunshine law meant to require the disclosure of the cost of credit, so that consumers can compare costs in a fair and open market.

57. As a result of the above, ACM has breached the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, is liable to Plaintiff for actual and statutory damages under the Act.

58. Either through reformation or monetary damages, Plaintiff should be restored to the position she should have been in when she responded to the false bait-and-switch advertisement of $15,800.

59. Westlake Financial is liable for ACM's violations of the TILA pursuant to the FTC Holder Rule and the terms of the contract.

## Count II
## Fair Credit Reporting Act Violation by ACM and Westlake Financial

60. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and full effect as though fully set forth herein.

61. Defendants failed to provide the notice of adverse action required by the FCRA, 5 U.S.C. § 1681m.

62. An adverse action notice setting forth the reasons for the denial of credit is required under the FCRA, because ACM changed the terms of its agreement with Plaintiff so as to include hidden terms—to wit, the difference between the agreed upon price of $15,800 and the $18,500 number apparently intentionally and willfully put down on the sales papers.

63. In other words, Plaintiff suffered an adverse action for which she was entitled to notice under the FCRA when ACM added to the sales documents additional, hidden terms to which she did not agree.

64. For its willful violation of the FCRA, Defendants are liable to Plaintiff for her actual damages or statutory damages between $100 to $1,000, punitive damages, and reasonable attorney fees under 15 U.S.C. § 1681n.

65. In the event that the FCRA violation is determined to be negligent rather than willful, Defendants are liable to Plaintiff for her actual damages and reasonable attorney fees under 15 U.S.C. § 1681o.

66. Westlake Financial is also liable for ACM's violations of the FCRA pursuant to the FTC Holder Rule and the terms of the contract.

## Count III
## Equal Credit Opportunity Act Violation by ACM and Westlake Financial

67. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and full effect as though fully set forth herein.

68. Defendants failed to provide the notice of adverse action required by ECOA, 15 U.S.C. § 1691(d)(2).

69. An adverse action notice setting forth the reasons for the denial of credit is required under ECOA, because ACM changed the terms of its agreement with Plaintiff so as to include hidden terms—to wit, the difference between the agreed upon price of $15,800 and the $18,500 number apparently intentionally and willfully put down on the sales papers.

70. In other words, Plaintiff suffered an adverse action for which she was entitled to notice under the ECOA when ACM added to the sales documents additional, hidden terms to which she did not agree.

71. For its violation of the ECOA, Defendants are liable to Plaintiff for her actual damages, punitive damages up to $10,000, and reasonable attorney fees under 15 U.S.C. § 1691e.

72. Westlake Financial is also liable for ACM's violations of the ECOA pursuant to the FTC Holder Rule and the terms of the contract.

## Count IV
### Declaratory Relief against ACM and Westlake Financial

73. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and full effect as though fully set forth herein.

74. Either through restoration or money damages, Plaintiff should be restored to the position she should have been in when she responded to the false bait-and-switch advertisement of $15,800.

## Count V
### Common Law Fraud Violations against ACM and Westlake Financial

75. Plaintiff repats and realleges each and every allegation contained in the foregoing paragraphs with the same force and full effect as though fully set forth herein.

76. ACM's agents intentionally, recklessly, and/or negligently made misrepresentations to Plaintiff regarding the price of the car and the vehicle service contract.

77. ACM then, without Plaintiff's knowledge, created documents containing different terms from those agreed upon.

78. Without ACM's false representations, Plaintiff would not have purchased the vehicle or the vehicle service contract.

79. Plaintiff relied on ACM's misrepresentations and was induced to purchase the aforementioned automobile and vehicle service contract.

80. ACM's actions as hereinbefore described were reckless, outrageous, willful and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

81. Moreover, either through reformation or money damages, Plaintiff should be restored to the position she should have been in when she responded to the false bait-and-switch advertisement of $15,800.

82. Westlake Financial is liable for ACM's violations of state law pursuant to the FTC Holder Rule and the terms of the contract.

## Count VI
### Violations of New York General Business Law §§ 349 and 350 by ACM and Westlake Financial

83. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and full effect as though fully set forth herein.

84. Under New York General Business Law ("GBL") § 349, deceptive acts or practices in the conduct of any business conducted in the state of New York are unlawful.

85. Under GBL § 350, "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby unlawful."

86. Under GBL § 350-e(3),

> Any person who has been injured by reason of any violation of section three hundred fifty or three hundred fifty-a of this article may bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or five hundred dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages, up to ten thousand dollars, if the court finds that the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

87. ACM's actions in inducing a consumer to purchase a car through bait-and-switch at a price in excess of the advertised price of $15,800 violated GBL § 349 and constituted false advertising, relied upon by Plaintiff, within the meaning of GBL § 350.

88. ACM has caused Plaintiff to suffer actual economic injury.

89. By and through its acts, omissions, concealments, and misrepresentations, ACM violated GBL § 349 with materially misleading and consumer-oriented deceptive acts and practices, with a broad impact on consumers at large, and have done so knowingly or willfully, and such actions constituted false advertising, upon which Plaintiff relied, within the meaning of GBL § 350.

90. As a direct and proximate result of ACM's deceptive acts and practices and false advertising, committed in violation of GBL § 349 and § 350, Plaintiff was

also damaged in that she, among other things, suffered fear, stress, and anxiety, and suffered monetary damages as set forth above.

91. Defendants' egregious acts justify the imposition of punitive damages.

92. Westlake Financial is liable for ACM's violations of GBL §§ 349 and 350 pursuant to the FTC Holder Rule and the terms of the contract.

93. Plaintiff claims all damages to which she is entitled arising from Defendants' violations of GBL §§ 349 and 350.

## Prayer for Relief

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a Judgment:

1. Declaring that Defendants' conduct complained of herein violates Plaintiff's rights under the TILA, FCRA, EOCA, and state law;

2. Either through reformation or monetary damages, Plaintiff should be restored to the position she should have been in when she responded to the false bait-and-switch advertisement of $15,800;

3. Directing Defendants to pay Plaintiff actual damages in an amount to be determined by a jury;

4. Directing Defendants to pay Plaintiff statutory damages as provided under the TILA, 15 U.S.C. § 1640, and FCRA, 15 U.S.C. § 1681, *et seq.*;

5. Directing Defendants to pay Plaintiff civil penalties as provided under New York General Business Law §§ 349 and 350;

6.   Directing Defendants to pay Plaintiff punitive damages in an amount to be determined by a jury;

7.   Awarding Plaintiff reasonable attorney fees, costs and disbursements of this action;

8.   Granting such other and further relief as this Court deems just and proper.

## Jury Demand

Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated:   New York, New York
         September 16, 2022

                                        Respectfully submitted,
                                        Bromberg Law Office, P.C.

                                        By: /s/ *Brian L. Bromberg*
                                            Brian L. Bromberg
                                            Plaintiff's Attorney

Attorney for Plaintiff:
Brian L. Bromberg
Bromberg Law Office, P.C.
352 Rutland Road #1
Brooklyn, NY 11225
Tel: (212) 248-7906